NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CHRISTOPHER R. BAHL,                    )
                                        )
          Appellant,              )
                                        )
v.                                      )       Case No. 2D16-2459
                                        )
RUPA P. BAHL,                           )
                                        )
          Appellee.               )
                                           )

Opinion filed December 9, 2016.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pasco County;
Lynn Tepper, Judge.

Mark F. Baseman of Felix, Felix &
Baseman, Tampa, for Appellant.

Marla Aronson Scherker of Marla Aronson
Scherker, P.A., Lutz, for Appellee.


MORRIS, Judge.

        Christopher R. Bahl, the father, appeals a nonfinal order modifying a

temporary timesharing order in the parties' underlying dissolution of marriage

proceedings.  Because the father was not provided with notice and an opportunity to be

heard, we reverse and remand for further proceedings.

In April 2015, the father filed his petition for dissolution of marriage. In November 2015, the father and the mother, Rupa P. Bahl, entered into a temporary mediated agreement giving the father the majority of timesharing with the parties' six-year-old son. The trial court adopted the agreement. The parties also agreed to the appointment of a guardian ad litem to investigate allegations of domestic violence between the parties and to evaluate the best interests of the child. The guardian ad litem filed her report on May 6, 2016, prompting the mother to file that same day an emergency motion for change in temporary timesharing based on the findings in the guardian ad litem's report. Later that day, the trial court granted the mother's motion on an ex parte basis, granting the mother primary timesharing, limiting the father's timesharing to one hour of supervised visitation every other weekend, and prohibiting phone contact between the child and the father. The father filed a motion to vacate the emergency order, which the trial court denied.

On appeal, the father raises several challenges to the nonfinal order. Mainly, the father argues that the trial court erred in granting the mother's motion without giving him an opportunity to be heard because there were no allegations demonstrating that an emergency existed.

Section 61.518(1), Florida Statutes (2015), provides that "[b]efore a child custody determination is made under this part, notice and an opportunity to be heard . . . must be given to . . . any parent whose parental rights have not been previously terminated." Section 61.503(3) defines "[c]hild custody determination" as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, residential care, or visitation with respect to a child. The term includes a permanent,

temporary, initial, and modification order." Id. These statutes required the trial court to give the father notice and an opportunity to be heard before entering an order affecting the custody of the child or the father's visitation. See Douglas v. Johnson, 65 So. 3d 605, 607 (Fla. 2d DCA 2011) ("When a court fails to give one party the opportunity to present witnesses or testify on his or her own behalf, the court has violated that party's fundamental right to procedural due process.").

A party's right to due process may give way when an emergency situation exists, "such as where a child is threatened with physical harm or is about to be improperly removed from the state." Smith v. Crider, 932 So. 2d 393, 398 (Fla. 2d DCA 2006); see Loudermilk v. Loudermilk, 693 So. 2d 666, 668 (Fla. 2d DCA 1997). Here, there were no allegations that the child was threatened with physical harm by the father or was about to be removed from the state by the father. Rather, the mother alleged that the guardian ad litem's report "outline[d] ongoing parental alienation perpetrated" by the father towards the mother. The mother alleged the father's actions, as observed by the guardian ad litem, were "terribly detrimental to the child's well-being[] and may be causing the child irreparable harm." While the allegations by the mother and the findings of the guardian ad litem were serious and warranted consideration by the trial court, they did not rise to the level of harm that would excuse the trial court from providing the father with an opportunity to be heard. At the very least, even if the allegations supported an emergency, once the trial court granted the ex parte order, it erred in not scheduling a prompt evidentiary hearing to allow the father to be heard. Smith, 932 So. 2d at 398-99; Loudermilk, 693 So. 2d at 668.

The father further argues that the trial court erred in granting relief based on the guardian ad litem's report and without sworn facts or testimony. The mother's allegations were based on an unsworn guardian ad litem report filed with the court. See Crooks v. Crooks, 657 So. 2d 918, 919 (Fla. 4th DCA 1995) (reversing emergency ex parte order changing custody because it was entered "without notice and *without verified pleading or sworn evidence*" and "was essentially founded on an unsworn report by a guardian ad litem"); see also Smith, 932 So. 2d at 399 n.4 ("Both ex parte injunctions and ex parte orders providing for a temporary modification of custody require the requesting party to submit sworn evidence to support the relief requested." (citing Crooks, 657 So. 2d at 919)). In the stipulated order appointing the guardian ad litem, the parties agreed that the court could "consider the information contained" in the guardian ad litem's report, but they also agreed that the guardian ad litem could "testify before the [c]ourt" and that the guardian ad litem's report would not be excluded by the hearsay rules. Thus, while the parties agreed that the report could be considered by the court and not subject to hearsay objections, they also contemplated that the guardian ad litem herself would testify before the court regarding her findings.

Section 61.403(5) provides that the guardian ad litem "may address the court and make written or oral recommendations to the court" and "shall file a written report." Section 61.403(5) also contemplates that the report will be presented at a hearing: "The report must be filed and served on all parties at least 20 days prior *to the hearing at which it will be presented* unless the court waives such time limit." (Emphasis added.) Thus, the father should have been given an opportunity at a hearing to address the findings in the guardian ad litem's report. See Leinenbach v.

- 4 -

Leinenbach, 634 So. 2d 252, 253 (Fla. 2d DCA 1994) (reversing an ex parte modification of custody because "[t]he father was not afforded an opportunity to rebut the contents of the [guardian's] report prior to the entry of the final order"); Miller v. Miller, 671 So. 2d 849, 851 (Fla. 5th DCA 1996) ("The parent in a change of custody case must be allowed an opportunity to rebut the conclusions of the report and to cross-examine the preparer." (first citing Leinenbach, 634 So. 2d at 253; and then citing Clayman v. Clayman, 536 So. 2d 358, 359 (Fla. 3d DCA 1988))).

The father also contends that the trial court erred in granting relief that the mother did not request. See Abbott v. Abbott, 98 So. 3d 616, 617-18 (Fla. 2d DCA 2012) (holding that it is an abuse of discretion and reversible error to grant relief that was not requested in child custody modification proceedings). Here, the mother asked only that the father's visitation be supervised; she did not ask that he be prohibited from having phone contact with the child. In fact, the guardian ad litem recommended in her report that the child have daily, supervised communications with the father. Yet, the trial court restricted the father from such communications. Thus, the order is further flawed in this regard.

Accordingly, we reverse the ex parte order and remand for further proceedings consistent with this opinion. The provisions of the order shall remain in effect until the trial court holds an evidentiary hearing within twenty days, unless both parties agree to a later date.[1] See Smith, 932 So. 2d at 400; Crooks, 657 So. 2d at 919.

---

[1] The provisions shall remain in effect until the hearing so as to avoid another sudden change in custody. Prior to the ex parte order, the child lived primarily with the father, had regular visitation with the mother, and had liberal phone communication with the mother. The ex parte order gave sole custody to the mother with extremely limited visitation with the father and no phone communication with the

Reversed and remanded.


VILLANTI, C.J., and BLACK, J., Concur.

---

father.  Thus, the child has been primarily with the mother for the last five months with only limited visitation with the father.